IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:17-cv-01164 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRIS C. ULASI, MICHAEL UMEORAH, | ) | |
| ANGELA UMEORAH, and | ) | |
| NINA U. DENCHUKWU, THE | ) | |
| BANK OF NEW YORK MELLON, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES OF AMERICA'S MOTION FOR SUMMARY
JUDGMENT AGAINST MICHAEL UMEORAH
AND ANGELA UMEORAH AND BRIEF**

**I. INTRODUCTION AND OVERVIEW.**

This is a collection suit brought by the United States seeking that Defendants, Michael Umeorah's and Angela Umeorah's ("Umeorahs") federal income tax and trust fund recovery penalty assessments be reduced to judgment and to foreclose the federal tax lien against certain real property that they own.[1]

**II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.**

The United States has completed its discovery.  This case is at the point where summary judgment is proper against the Umeorahs due to the undisputed facts and applicable law.  The

---

[1]Default Judgment has been entered against Defendants, Chris Ulasi and Nina Denchukwu.  (ECF # 23)  A Stipulation between the United States and Bank of New York Mellon (ECF # 52) has been filed which provides the priority between the parties regarding the subject property to be sold to pay the Umeorahs' tax liabilities.

granting of summary judgment against them will avoid the waste of further judicial resources

concerning the Umeorahs' liability as a matter of law.

## III. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT.

1. Whether Michael and Angela Umeorah were persons responsible for collecting, accounting for, or paying over the payroll taxes withheld from the wages of Jubilee Group Home, Inc.'s employees for 31 quarters from the fourth quarter of 2003 to the first quarter of 2015 listed below?

2. Whether Michael and Angela Umeorah willfully failed to collect, account for, or pay over the collected withheld payroll taxes of Jubilee Group Home, Inc. for the 31 quarters listed below as provided by 26 U.S.C. § 6672?

3. Whether the Umeorahs' are liable for income tax liabilities for the tax years 2004-2007, 2009, 2010 and 2014?

4. Whether the federal tax liens attach to the Umeorahs' real property?

## IV. SUMMARY OF THE ARGUMENT.

The undisputed facts for this Motion for Summary Judgment come from the Umeorahs,' Chris Ulasi's, and Nina Denchuwuku's deposition testimony and the attached exhibits. This evidence together with Fifth Circuit precedent, establish that summary judgment must be granted in favor of the United States holding the Umeorahs to be responsible persons who acted willfully for each quarter listed in the complaint. The Umeorahs dispute that they are liable for the trust fund recovery periods during the time they were in Nigeria. However, as discussed below, the Umeorahs were responsible persons under 26 U.S.C. § 6672 for all of the periods as a matter of law. They operated Jubilee and were aware of its tax problems before leaving Houston and continued their involvement with Jubilee when in Nigeria. While residing in Nigeria they visited Houston and remained owners and directors of Jubilee. Upon their return to Houston they resumed their day-to-day involvement with Jubilee as principles of the company. Further, the

Umeorahs during the periods at issue and afterward, paid other creditors rather than the tax liability.

The Umeorahs do not dispute that they are liable for the income tax liabilities listed in the complaint.  Additionally, the federal tax liens attach to the Umeorahs' real property, and upon foreclosure of the liens, the proceeds will be applied toward the Umeorahs' tax liabilities.

## V. STATEMENT OF MATERIAL FACTS.

### A. Trust Fund Recovery Penalties

1.    This case involves primarily the Trust Fund Recovery Penalties assessed against Michael and Angela Umeorah for the unpaid trust fund payroll taxes of Jubilee Group Home, Inc. ("Jubilee") for the 31 quarters listed below, from the fourth quarter of 2003 until the first quarter of 2015 ("period at issue").  As set forth in the chart below, the amount due through December 11, 2017, for Michael Umeorah for the Trust Fund Recovery Penalties is $1,016,554.81 and for Angela Umeorah is $1,016,803.00.[2]  The assessed amounts owed are supported by the Certificates of Assessments, Payments and Other Specified Matters (Forms 4340).[3]

### Michael Umeorah's Trust Fund Penalty Assessments

| Tax Period | Assessment Date | Original Assessment Amount | Unpaid Balance with Interest as of 12/11/2017 |
|---|---|---|---|
| December 31, 2003 | 05/14/2007 | $56,178.64 | $37,183.45 |

---

[2] *See* Exhibits C and D, Transcripts of Accounts, attached to Frank Nwobodo's Declaration (Nwobodo's Dec.) which is attached as Exhibit. B.  The discrepancy between Michael and Angela Umeorah's total amount due is because certain adjustments to the accounts were made at different times and fees and collection costs were not assessed equally.  *Id.* at ¶ 6.

[3]*See* Exhibits E and F, Forms 4340.  Not all amounts due and owing to the United States are included in the Form 4340 transcripts.  Nwobodo's Dec. at ¶ 9.  Form 4340 transcripts do not show all accrued penalty and interest, but, only what penalty and interest has been formally assessed by the IRS.  *Id.* at ¶ 10.

| June 30, 2004 | 04/16/2007 | $18,808.07 | $28,824.47 |
|---|---|---|---|
| December 31, 2004 | 04/16/2007 | $72,745.71 | $111,319.30 |
| March 31, 2005 | 04/16/2007 | $68,727.89 | $105,514.10 |
| December 31, 2005 | 04/16/2007 | $35,000.00 | $39,739.95 |
| March 31, 2006 | 05/12/2008 | $64,498.38 | $91,366.67 |
| June 30, 2006 | 05/12/2008 | $61,650.36 | $87,331.33 |
| September 30, 2006 | 05/12/2008 | $24,863.39 | $35,08.15 |
| December 31, 2006 | 04/21/2014 | $971.60 | $1,081.68 |
| March 31, 2007 | 05/12/2008 | $19,926.09 | $28,212.52 |
| December 31, 2008 | 04/21/2014 | $17,319.80 | $19,628.71 |
| March 31, 2009 | 04/21/2014 | $22,439.38 | $25,436.88 |
| June 30, 2009 | 04/21/2014 | $19,175.35 | $21,733.84 |
| September 30, 2009 | 04/21/2014 | $21,374.32 | $24,228.57 |
| December 31, 2009 | 04/21/2014 | $21,865.73 | $24,786.07 |
| March 31, 2010 | 04/21/2014 | $21,063.89 | $23,876.40 |
| June 30, 2010 | 04/21/2104 | $21,009.78 | $23,815.00 |
| September 30, 2010 | 04/21/2014 | $23,517.44 | $26,659.93 |
| December 31, 2010 | 04/21/2014 | $24,035.19 | $27,247.32 |
| March 31, 2011 | 04/21/2014 | $20,496.89 | $23,233.14 |
| June 30, 2011 | 04/21/2014 | $20,182.97 | $22,876.98 |
| September 30, 2011 | 04/21/2014 | $21,489.95 | $24,359.74 |
| December 30, 2011 | 04/21/2014 | $22,317.84 | $25,298.98 |
| March 31, 2012 | 04/21/2014 | $20,786.48 | $23,561.66 |
| June 30, 2012 | 04/21/2014 | $24,229.17 | $27,467.40 |
| September 30, 2012 | 04/21/2014 | $18,972.18 | $21,503.36 |
| December 31, 2012 | 04/21/2014 | $5,000.00 | $5,651.92 |
| June 30, 2014 | 08/17/2015 | $5,070.86 | $52.27 |
| September 30, 2014 | 08/17/2015 | $22,071.96 | $23,495.05 |
| December 31, 2014 | 08/17/2015 | $25,447.53 | $25,138.17 |

| March 31, 2015 | 03/14/2016 | $11,034.15 | $10,721.80 |
|---|---|---|---|
| **TOTAL** | | | **$1,016,554.81** |

**Angela Umeorah's Trust Fund Recovery Penalties**:

| Tax Period | Assessment Date | Original Assessment Amount | Unpaid Balance with Interest as of 12/11/2017 |
|---|---|---|---|
| December 31, 2003 | 04/16/2007 | $56,178.64 | $37,712.04 |
| June 30, 2004 | 04/16/2007 | $18,808.07 | $28,502.02 |
| December 31, 2004 | 04/16/2007 | $72,745.71 | $111,319.30 |
| March 31, 2005 | 04/16/2007 | $68,727.89 | $105,424.77 |
| December 31, 2005 | 04/16/2007 | $35,000.00 | $39,739.95 |
| March 31, 2006 | 05/12/2008 | $64,498.38 | $91,366.67 |
| June 30, 2006 | 05/12/2008 | $61,650.36 | $87,331.33 |
| September 30, 2006 | 05/12/2008 | $24,863.39 | $35,208.15 |
| December 31, 2006 | 04/21/2014 | $971.60 | $1,144.84 |
| March 31, 2007 | 05/12/2008 | $19,926.09 | $28,212.52 |
| December 31, 2008 | 04/21/2014 | $17,319.80 | $19,628.71 |
| March 31, 2009 | 04/21/2014 | $22,439.38 | $25,436.88 |
| June 30, 2009 | 04/21/2014 | $19,175.35 | $21,733.84 |
| September 30, 2009 | 04/21/2014 | $21,374.32 | $24,228.57 |
| December 31, 2009 | 04/21/2014 | $21,865.73 | $24,786.07 |
| March 31, 2010 | 04/21/2014 | $21,063.89 | $23,876.40 |
| June 30, 2010 | 04/21/2104 | $21,009.78 | $23,815.00 |
| September 30, 2010 | 04/21/2014 | $23,517.44 | $26,659.93 |
| December 31, 2010 | 04/21/2014 | $24,035.19 | $27,247.32 |
| March 31, 2011 | 04/21/2014 | $20,496.89 | $23,233.14 |
| June 30, 2011 | 04/21/2014 | $20,182.97 | $22,876.98 |
| September 30, 2011 | 04/21/2014 | $21,489.95 | $24,359.74 |
| December 30, 2011 | 04/21/2014 | $22,317.84 | $25,298.98 |
| March 31, 2012 | 04/21/2014 | $20,786.48 | $23,561.66 |

| June 30, 2012 | 04/21/2014 | $24,229.17 | $27,467.40 |
| September 30, 2012 | 04/21/2014 | $18,972.18 | $21,503.36 |
| December 31, 2012 | 04/21/2014 | $5,000.00 | $5,651.92 |
| June 30, 2014 | 08/17/2015 | $5,070.86 | $86.39 |
| September 30, 2014 | 08/17/2015 | $22,071.96 | $23,495.05 |
| December 31, 2014 | 08/17/2015 | $25,447.53 | $25,138.17 |
| March 31, 2015 | 03/14/2016 | $11,034.15 | $10,755.90 |
| **TOTAL** | | | **$1,016,803.00** |

### B. The Umeorahs' Joint Income Tax Liabilities

2.      The case also involves the joint income taxes assessed against Michael and Angela Umeorah as set forth in the chart below.[4]  As of December 11, 2017, the Umeorahs jointly owe $124,007.05.[5]  The assessed amounts are supported by the Forms 4340[6]:

| Tax Year | Date of Assessment | Assessed Amounts | Amount Due With Accruals Through 12/11/2017 |
| --- | --- | --- | --- |
| 2004 | 03/29/2010 | $11,444.00 | $27,594.81 |
| 2005 | 03/29/2010 | $11,925.00 | $28,579.31 |
| 2006 | 04/05/2010 | $5,871.00 | $10,216.40 |
| 2007 | 03/08/2010 | $13,815.00 | $23,920.97 |
| 2009 | 06/28/2010 | $2,597.00 | $1,237.42 |
| 2010 | 05/09/2011 | $4,393.00 | $1,181.46 |
| 2014 | 09/12/2016 | $22,308.00 | $31,276.68 |
| **TOTAL** | | | **$124,007.05** |

---

[4] The Umeorahs do not dispute that they are liable for the income taxes.  Angela Umeorah's Deposition (Angela's Dep.), attached as Exh. G, at 126-127 and Michael Umeorah's Deposition (Michael's Dep.) attached as Exhibit H, at 77-78.

[5] *See* Account Transcripts, Exh. I attached to Nwobodo's Dec., Exh. B.

[6] *See* Forms 4340 attached as Exh. J.

### C. The Umeorahs, Chris Ulasi and Nina Denchukwu formed Jubilee in 1998

3.      Jubilee Group Home, Inc. ("Jubilee") was founded by Chris Ulasi ("Ulasi"), Nina Denchukwu ("Denchukwu"), Angela Umeorah ("Angela") and Michael Umeorah ("Michael") (also "the four parties") in 1998.[7]  The Umeorahs first had the idea for a company to provide group homes for individuals with an intellectual disability.  The Umeorahs asked Chris Ulasi (Michael's childhood friend) and Nina Denchuwku, Chris' wife, to join them in forming the business.[8]  The four parties are 25% equal owners and directors from the formation until the present.[9]  Further, the four parties make decisions about Jubilee together.[10]  They also receive payments from Jubilee as directors.[11]

4.      The four parties contributed money for the start-up of Jubilee and at times have contributed funds to cover Jubilee's expenses including, payroll.[12]

5.      Michael Umeorah served as the President and Chief Executive Officer of Jubilee until May 22, 2007.  Ulasi was named President on May 22, 2007 and was in charge of the day-to-day operations of Jubilee.[13]  In December 2013, Michael took over the day-to-day operations.[14]

---

[7] *See* Exh. 1, Amended Disclosure Statement filed in Jubilee's Bankruptcy case, *In re Jubilee Group Homes, Inc.,* Case No. 07-33326 (Bankr. S.D. Tex 2007) (Jubilee Bankruptcy) ECF 109, at 17. (The government is using the same numbering system for the Exhibits as used in the depositions.  Exhibits not used in the depositions will be numbered with letters (A-T)).

[8] Angela's Dep. at 24-25.

[9] Exh. 1, Amended Disclosure Statement, at 17; Angela's Dep. at 24-25; Michael's Dep. at 27.

[10] Angela's Dep. at 46; Chris Ulasi's Deposition (Ulasi Dep.) attached as Exh. K at 38-40.

[11] Angela's Dep. at 54-55; Ulasi Dep. at 36-37.

[12] Angela's Dep. at 55, 93; Ulasi Dep. at 36; Michael's Dep. at 27; Nina Denchuwuku's Deposition (Denchuwuku Dep.) attached as Exhibit L at 27-28.

[13] Exh. 1, Amended Disclosure Statement, at 17.

[14] Angela's Dep. at 12; Michael's Dep. at 37; Denchuwku's Dep. at 29.

6.      Jubilee's purpose is to provide group homes for individuals with an intellectual disability.[15]

7.      In the beginning, Jubilee had four South Texas branches in Houston, Corpus Christi, McAllen and Beaumont.[16]  However, on July 11, 2008, the Texas Department of Aging and Disability (DADS) denied certification of Jubilee's Group Homes' Medicaid agreement.[17] The adverse decision caused Jubilee to discontinue operations within the greater Houston area.[18] Jubilee continued its operation in Beaumont, Texas only.[19]

8.      Jubilee filed for bankruptcy on May 22, 2007.  The purpose for filing bankruptcy was revenue loss from closing the operations in the Corpus Christi branch and due to significant amounts of unpaid IRS debt.[20]

9.      Jubilee had problems with payroll taxes from the beginning.[21]   As of the bankruptcy filing of May 22, 2007, Jubilee owed over $1.2 million of unpaid employment taxes.[22]  Jubilee continued to incur employment taxes after filing bankruptcy.[23]

**D. Operation of Jubilee**

10.      The four parties purchased homes for the purpose of housing the clients of Jubilee.[24]   Angela owned three South Texas properties for this purpose.[25]  Michael owned three South Texas properties that were used for Group Homes and for Jubilee's office at Spring Grove

---

[15] Exh. 1, Amended Disclosure Statement, at 17.
[16] Angela's Dep. at 27.
[17] Exh. 1, Amended Disclosure Statement, at 18.
[18] *Id.*
[19] *Id.*; Angela's Dep. at 34; Michael's Dep. at 30.
[20] Exh. 1, Amended Disclosure Statement, at 18.
[21] Michael's Dep. at 28.
[22] Exh. 35, IRS Proof of Claim filed in Jubilee Bankruptcy.
[23] *See* paragraph 1 above.
[24] Angela's Dep. at 27-28.
[25] Angela's Dep. at 29-33. *See also* Exh. 2, Bankruptcy Petition and Schedules, ECF 43, in Jubilee's Bankruptcy, at 15-16.

in Houston.[26]  Jubilee paid rent to the owners of these properties by paying the four parties'

mortgages.[27]

      11.     The four parties had the authority to direct Jubilee's operations during the period

at issue.[28]

      12.     The four parties had the authority to hire and fire employees during the period at

issue.[29]

      13.     The employees reported to the four parties.[30]

      14.     The four parties had the authority to direct payment of bills during the period at

issue.[31]  If there was not enough money to pay creditors, the four parties decided which creditors

to pay.[32]

      15.     The four parties had the authority to enter into contracts for Jubilee.[33]

      16.     The four parties could authorize payroll and had the authority to make federal tax

deposits.[34]

      17.     The four parties had the authority to sign checks for Jubilee during the period at

issue.[35]

---

[26] *Id.*; Michael's Dep. at 35 and 46.

[27] *Id.* at 34, 35, 46, 47; Angela's Dep. at 35; Jubilee's Bankruptcy Schedules, Exh. 2 at 15-16.

[28] Arvy McKinney's Declaration (McKinney Dec.) Exh. M, ¶ 5 .

[29] Michael's Dep. at 29.

[30] *Id.* at 29.

[31] *Id.* at 19-20, 22-23, 30-31, 73-74;  *See also* Form 4180, Michael's Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax, attached as Exh. 34, and Ulasi's Form 4180, attached as Exh. 44; *see also* McKinney Dec. ¶ 4.

[32] Michael's Dep. 74; Denchuwku's Dep. at 30.

[33] Michael's Dep. at 74.

[34] Exh. 34; Exh. 44; Michael's Dep. at 22-23; Ulasi's Dep. at 51; Denchuwuku's Dep. at 26.

[35] Michael's Dep. at 41-42; Ulasi's Dep. at 51-52.  It appears that beginning in May 2007, when Jubilee's bank accounts were moved to Wells Fargo, until January, 2013, the Umeorahs were not signatories on Jubilee's accounts. *Id.* The Umeorahs and Ulasi presently have checkbooks and can write checks for Jubilee.  Angela's Dep. at 57.

18.     The four parties have the authority to determine salaries and determined salaries for themselves.[36]

19.     Michael and Ulasi determined the financial policy for Jubilee.[37]

20.     From the beginning until 2006, Michael and Ulasi prepared the payroll and determined the amount of payroll taxes to deposit.[38]  All four parties were aware that the taxes were not being deposited.[39]

21.     Michael and Ulasi prepared, reviewed, signed or authorized the transmittal of payroll tax returns from 1996 until at least 2015.[40]

22.     The four parties had the authority to sign and file Jubilee's Form 941 employment tax returns from 2001 until at least 2015.[41]  Michael signed both Forms 941 and Forms 1120, Corporate Income Tax Returns, for Jubilee.[42]

23.     The four parties were aware of the tax problems and held many meetings to discuss Jubilee's non-payment of taxes.[43]  Michael testified that both Angela and Denchukwu were aware of the payroll tax problems.[44]  They had the authority to do something about it, but, did not.[45]

---

[36] Michael's Dep. at 74.
[37] Exh. 34 and 44; Angela Dep. at 52.
[38] Michael's Dep. at 21-23; Ulasi's Dep. at 42-43.
[39] *Id.*
[40] Exh. 34 and 44.
[41] Exh. 34 at 2 and Exh. 44 at 2.
[42] Michael's Dep. at 40, 77-78.
[43] Exh. 34 and 44; Ulasi's Dep. at 45-46; Denchukwu's Dep. at 21, 25-26.
[44] Michael's Dep. at 22, Ulasi's Dep. at 42-43, 45.
[45] Michael's Dep. at 22-23.

24.    The four parties handled contacts with the IRS regarding the non-payment of payroll taxes.[46]  The four parties met with the IRS regarding the non-payment of taxes.[47]

**E. Michael Umeorah was a responsible party during the periods at issue including, when he was in Nigeria**

25.    Just prior to leaving for Nigeria, during 2004-2006, Michael testified that he helped to stabilize Jubilee's debts during the closing of the programs in Houston, Corpus Christi and the Valley.[48]

26.    Michael testified that he was out of the country between 2006 and the end of 2013.[49]  He contends that he left the business for Ulasi to run.[50]

27.    Michael visited Houston frequently during 2006 through 2013.[51]  He returned to Houston for periods of approximately two weeks at a time beginning in 2009.  Angela, his wife, spent time in Houston during 2009 and he visited.[52]  In 2010, he started coming back to Houston more frequently.[53]

28.    The Umeorahs kept their house located at Old Windsor Way in Sugar Land, Texas, during their time in Nigeria and received mail there during the period they were away.[54]  They have owned and lived at Old Windsor Way since 2000.[55]  They continued to make mortgage payments on the house while away.[56]

---

[46] Exh. 34 and 44; Denchukwu's Dep. at 28-29; Angela's Dep. at 95.
[47] Denchukwu's Dep. at 28-29.
[48] Michael's Dep. at 13-14.
[49] *Id*. at 10, 13-14, 16, 57-58.
[50] *Id*. at 55.
[51] *Id*. at 58.
[52] *Id*. at 58, 72.
[53] *Id*. at 63.
[54] *Id*. at 38, 62; Angela's Dep. at 23.
[55]*Id.*
[56]*Id.*

29.     Michael was an owner and director of Jubilee throughout the periods at issue.  He never resigned his directorship or sold or transferred his interest in Jubilee.[57]

30.     Michael wanted his name on the bank accounts even when he was in Nigeria.[58]

31.     Michael was not concerned about Jubilee's tax issue while in Nigeria, even though he was aware of the tax problems before he left for Nigeria.[59]  He hoped that the taxes would be paid while he was away.[60]

32.     Michael had contact with Ulasi and discussed Jubilee's business while in Nigeria.[61]  The Umeorahs were aware of Jubilee's status while in Nigeria.[62]

33.     Michael returned permanently to Houston in December, 2013.[63]  Since then he has run the day-to-day operations but, informs the other three regarding Jubilee and they make decisions together.[64]

34.     Michael primarily decides if payments should be made for expenses.[65] Michael testified that in 2014 he took complete control over the accounts.[66]  The Jubilee checkbooks have been kept at the Umeorahs residence since 2014 and all the Jubilee mail now goes to the Umeorahs' home address at Old Windsor Way.[67]  Jubilee's business office was moved to their residence.[68]

---

[57] Michael's Dep. at 75-76.
[58] *Id.* at 55.
[59] *Id*. at 42-43.
[60] *Id.*
[61] Angela's Dep. at 42.
[62] Ulasi Dep. at 37-40.
[63] Michael's Dep at 16.
[64] *Id*. at 16, 37; Denchukwu's Dep. at 29-30.
[65] Angela's Dep. at 78-79
[66] Michael's Dep. at 23, 40.
[67] *Id*. at 40-41.
[68] *Id.* at 36-37, 40-41.

35.     Although Michael is running Jubilee's day-to-day business, he states that Ulasi still makes the decisions for Jubilee.  Michael stated that "Ulasi still has a say.  He owns 25%.  He is still a director.  He still functions.  He has voting power." [69]  He further asserts that even when a director is not actually running the company he is still a 25% owner and a director with voting power.[70]

36.     Michael worked with the IRS regarding the tax liability during the period at issue.  He and Ulasi negotiated an installment agreement with the IRS when he returned to Houston.[71]

37.     Michael received income from Jubilee during the period at issue that he reported as administrative expenses on his Schedule C.[72]

**F. Angela Umeorah was a responsible party for the periods at issue including, when she was in Nigeria**

38.     Angela was an owner and director of Jubilee throughout the periods at issue.  She never resigned her directorship or sold or transferred her interest in Jubilee.[73]

39.     Angela hired employees for Jubilee.  She hired Arvy McKinney, the manager of the Beaumont property.[74]

40.     Angela Umeorah also worked as an employee of Jubilee and received a salary.[75]

41.     Angela testified that she moved to Nigeria sometime between 2004 and 2006 and moved back to Houston permanently in 2012.[76]

---

[69] *Id.* at 37.
[70] *Id.*
[71] *Id.* at 33; Exh. 34 at 2.
[72] Form 1040, Income Tax Returns for 2005, 2006, 2007, 2014 and 2015, attached as Exhs. 20-22, 29 and 30.  *See also* copies of payroll checks to Michael attached as Exh. N.
[73] Angela's Dep. at 25-27, 125-126.
[74] McKinney's Dep., Exh. M at ¶ 2.
[75] Angela's Dep. at 38-39, 54.
[76] *Id.* at 19, 22-23, 122.

42.     Angela testified that she returned to Houston for periods of time during 2004 through 2012.  When she was in Houston during these periods, she worked as a nurse.[77]

43.     Angela was aware of Jubilee's tax problems prior to moving to Nigeria in 2004[78] and also when she was back in Houston in 2012.[79]

44.     She had the authority to sign checks for Jubilee.[80]  Angela signed checks to pay Jubilee's federal taxes as early as March 7, 2012.[81]

45.     Angela is aware of the duty to deposit payroll taxes.[82]  Angela had the authority to make sure the taxes were paid.  In fact, she personally worked with the IRS to make sure payments were made when she came back from Nigeria.[83]

**G. Angela and Michael Umeorah had signature authority over Jubilee's bank accounts**

46.     Prior to Jubilee's bankruptcy, Jubilee had bank accounts at Metro Bank.  The Umeorahs were signatories on these accounts.[84]

47.     Upon filing the bankruptcy, Jubilee's accounts were switched to Wells Fargo Bank.[85]

48.     Jubilee's main operating account at Wells Fargo is the account ending in 8699. The payroll checks and other operating checks come from this account.[86]  Angela upon moving

---

[77] *Id*. at 21-22.
[78] *Id*. at 54.
[79] *Id*. at 88; *see also* checks signed by Angela to the IRS, Exh. 17, at Bates Nos. DOJ 0000282-285, 287, 289-292, 300, 301, 304.
[80] Angela's Dep. at 58.
[81] *See* Exh. 17 at Bates No. DOJ 0000304.
[82] Angela's Dep. at 55-56.
[83] *Id*. 59-60. *See also* Exh. 17.
[84] Angela's Dep. at 43; Michael's Dep. at 25, 41; Ulasi's Dep. at 51.
[85] Michael's Dep. at 41.
[86] *Id*. at 52.

back to Houston in 2012 wanted access to these accounts.[87]  Angela became a signatory on this account on or about January 16, 2013.  Michael also became a signatory on this account on January 16, 2013.[88]  At some point, the bank statements for this account started being sent to the Umeorahs' home address at Old Windsor Way.[89]

49.     The Wells Fargo business account for operations in Beaumont is the account number ending 8707.[90]  Arvy McKinney is the program manager in Beaumont.[91]  She has signature authority on this bank account.[92]

50.     Money from the main operating account (8699) would be transferred to the Beaumont account by one of the four owners upon Ms. McKinney's request.[93]  Since Michael's return in 2013, he makes the decisions on transferring money to other accounts for payment.[94] Michael looks through the payroll hours provided and approves whether the payroll checks go out.[95]  However, all four directors have access to the main operating account.[96]

51.     Michael opened a dedicated account for tax payments with Wells Fargo (2946). Money is taken from the excess balance and put in that account.  Only Michael has access to this account.[97]

---

[87]Angela's Dep. at 43.
[88] *See* signature cards, Exh 13.
[89] *See* Exhibit 16.
[90] Michael's Dep. at 57.
[91] Angela's Dep. at 50, 78.
[92] Michael's Dep. at 56-57.
[93] McKinney Dec.at ¶ 4; Michael's Dep. at 30-31.
[94] Angela's Dep. at 78-79, 82.
[95] *Id*. at 81-82.
[96] Michael's Dep. at 55-56.
[97] *Id*. at 51; Angela's Dep. at 90.

**H. The Umeorahs filed 2004-2016 Income Tax Returns during the periods that they were in Nigeria**

52.     The Umeorahs filed returns that reported income earned in the United States for the years 2005 through 2014 during the time they were in Nigeria.[98]

53.     In 2005, 2006, 2007 and 2014, the Umeorahs reported income as administrative expenses from Jubilee on Schedule C of $60,000, $50,000, $67,376, and $49,800, respectively.[99]

**I. Michael Willfully Failed to Collect, Account For or Pay Over the Trust Fund Taxes of Jubilee**

54.     Michael was aware of the duty to pay payroll taxes and was aware that the tax bills were not being paid because he knew which bills were being paid.[100]

55.     Michael testified that Jubilee had problems with payroll taxes from the beginning.[101]  He admits that he first became aware of the tax problems in 2003.[102]  He was aware of the tax liability because he prepared payroll by using Quickbooks from the beginning to 2006.[103]

56.     Ulasi and Michael were aware that the taxes were not being paid at the time that payroll taxes were not being deposited because one of their duties was to deposit the taxes.[104]

57.     The four parties had meetings regarding the back taxes before the Umeorahs left for Nigeria and when they returned from Nigeria.[105]

---

[98] Attached as Exhs. 20-29 are copies of the Umeorahs' income tax returns for the tax years 2005-2014; Angela's Dep. at 110-112, 117.
[99] Exhs. 20, 21, 22 and 26; *see also* Angela's Dep. at 109; Michael's Dep. at 53, 66.
[100] Michael's Dep. at 34.
[101] *Id*. at 28.
[102] *Id*. at 20-21; Exh. 34.
[103] Michael's Dep. at 20-21.
[104] Exh 34 and 44.
[105] Michael's Dep. at 26-27.

58.     Michael was aware of the huge tax liability when he left for Nigeria.[106] He was hoping they would be paid.[107]  He did not attempt to see if the taxes were paid during his time in Nigeria, he was hoping they would be paid.[108]

59.     Michael had actual knowledge of Jubilee's non-payment of the payroll taxes.[109]

60.     Michael paid creditors of Jubilee other than the IRS after he learned of the unpaid employment withholding taxes.[110]  Further, he received paychecks after he was aware of the unpaid employment taxes.[111]  Michael was aware that all the business expenses were paid after and during the accrual of the tax liabilities and he authorized payment of the expenses.[112]

61.     Michael states that all Jubilee employees were paid.[113]

**J. Angela Willfully Failed to Collect, Account For or Pay Over the Trust Fund Taxes of Jubilee**

62.     Between 2000 and 2003, Angela along with Michael Umeorah owned and ran another home health agency, City Medical Services.[114]  Angela was aware of the duty to pay the payroll taxes as early as 2000.[115]  She was in charge of payroll at City Medical Services and handled the payroll there from 2000-2003.[116]

---

[106] *Id*. at 44-45.
[107] *Id*. at 42.
[108] *Id*.
[109] Exh. 34.
[110] *See* copies of checks from Jubilee's Wells Fargo account, attached as Exh. O.  Michael also wrote checks to himself.  Exh. 18 at 7; Angela's Dep. at 90-91
[111] *See* copies of payroll checks to Michael.  Exh. N.
[112] Exh. 34.
[113] Michael's Dep. at 31, Exh. 34.
[114] Angela's Dep. at 105, Michael's Dep. at 14-15.
[115] Angela's Dep. at 106.
[116] *Id.*

63.     Angela was aware before she left for Nigeria that Jubilee had problems with its payroll taxes.[117]  Angela was aware of the tax problems prior to 2003.[118]  She testified that Jubilee has always been able to pay its bills such as rent and utilities, except for the taxes.[119]

64.     Michael testified that Angela was aware of the payroll tax problems.  She had the authority to do something about it, but did not.[120]

65.     Angela has signed checks to both the IRS and other creditors after she was aware of the tax liability.[121]

**K. The federal tax liens attach to the Umeorahs' property located at Old Windsor Way**

66.     The Umeorahs are the record owners of certain residential real property located at 29 Old Windsor Way, Sugar Land, Texas 77479 and described as follows:

> Lot Twelve (12), in Block One (1), of Avalon Waters of Avalon, Section Two (2), an Addition in Fort Bend County, Texas, according to the map or plat thereof recorded in slide no. 1725/A & B, of the map/plat records of Fort Bend County, Texas[122]

67.     The United States recorded Notices of Federal Tax Lien against the Umeorahs with respect to the Form 1040 assessments described in paragraph 2 above in the real property records of Fort Bend County, Texas, on April 26, 2010, for the tax years 2004 through 2007, on August 9, 2010, for the tax year 2009, on June 27, 2016, for the tax year 2010 and on October 11, 2016, for the tax year 2014.[123]

---

[117] *Id.* at 38, 54-56.
[118] Michael's Dep. at 22-23.
[119] Angela's Dep. at 92-93.
[120] Michael's Dep. at 22-23.
[121] *See* copies of checks signed by Angela, Exh. P; Exh. 17; Exh. 18 at 6; Angela's Dep. at 90-91.
[122] Deed attached as Exh. Q.
[123] Notices of Federal Tax Lien attached as Exh. R.

68.     The United States recorded Notices of Federal Tax Lien against Michael Umeorah with respect to the assessments described in paragraph 1 above in the real property records of Fort Bend County, Texas, on October 17, 2007, and on June 20, 2016, for the fourth quarter of 2003, second and fourth quarter of 2004 and first and fourth quarter of 2005; on July 28, 2008, and June 20, 2016, for the first three quarters of 2006 and first quarter of 2007; and on June 20, 2016, for the remaining quarters listed in paragraph 1.[124]

69.     The United States recorded Notices of Federal Tax Lien against Angela Umeorah with respect to the assessments described in paragraph 1 above in the real property records of Fort Bend County, Texas, on January 26, 2009, for the fourth quarter of 2003, second and fourth quarter of 2004, and the first and fourth quarter of 2005;[125] on January 26, 2009 and November 28, 2017, for the first, second and third quarter of 2006, and the first quarter of 2007; on June 9, 2014 for the fourth quarter of 2006; the fourth quarter of 2008, the four quarters of 2009, 2010, 2011, and 2012; on April 11, 2106, for the second, third and fourth quarter of 2014 and on May 2, 2016, for the first quarter of 2015.[126]

## VI. STANDARD FOR GRANTING SUMMARY JUDGMENT.

### A. GENERAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT.

As this Court held when granting summary judgment in favor of the United States in *Fitzmaurice v. United States,* 81 F.Supp.2d 741, 743 (S.D. Tex. 1999), the proper standard for determining when a motion for summary judgment should be granted is as follows:

---

[124] Notices of Federal Tax Lien attached as Exh. S.
[125] Notices for these quarters self-released in 2017, thus revocations of release were filed on or about June 8, 2018 and the notices were refiled on or about July 23, 2018.  *See* Nwobodo Dec. at ¶ 15.
[126] *Id.;* Notices of Federal Tax Lien attached as Exh. T.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *See id.* When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 106 S.Ct. at 2553–54).

"[W]hen a district court denies a motion for summary judgment on the basis that there exist genuine issues of material fact, the district court is actually making two separate conclusions: 'First, the court has concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. Second, the court has concluded that the issues of fact are material, i.e. resolution of the issues might affect the outcome of the suit under governing law.'" *Lemoine v. New Horizons Ranch and Center, Inc.,* 174 F.3d 629, 633 (5th Cir.1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.1998), *cert. denied*, 525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little*, 37 F.3d at 1075 (quoting *Celotex*, 106 S.Ct. at 2552).

B. SUMMARY JUDGMENT IN SECTION 6672 CASES.

Motions for Summary Judgment are frequently granted in Section 6672 cases, such as the present one.  This has been true from the time of *Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979), to the present time, *Arriondo v. United States,* 196 F.Supp.3d 708 (S.D. Tex. 2016); *Behrman v. United States,* 179 F.Supp.3d 738 (E.D. Tex. 2016); *Zarate v. United States*, 2012

WL 4482048 (S.D. Tex. 2012); *Conway v. United States*, 647 F.3d 228 (5th Cir. 2011); *Rineer v. United States*, 594 F.Supp.2d (N.D. Tex. 2009); *Verret v. United States*, 542 F.Supp.2d 526 (E.D. Tex. 2008), *aff'd by unpublished opinion*, 312 Fed. Appx. (5th Cir. February 26, 2009); *Morgan v. United States*, 937 F.2d 281 (5th Cir. 1991); and *Lencyk v. Internal Revenue Service*, 384 F.Supp.2d 1028 (W.D. Tex. 2005).

## VII. STATUTES INVOLVED.

The statutes pertinent to this matter are 26 U.S.C. Sections 6671 and 6672.

## VIII. ARGUMENT AND AUTHORITIES.

A.   MICHAEL AND ANGELA UMEORAH WERE RESPONSIBLE PERSONS UNDER
§ 6672 FOR PAYMENT OF TRUST FUND TAXES FOR JUBILEE FOR EACH
QUARTER ASSESSED, WHO WILLFULLY FAILED TO COLLECT, ACCOUNT
FOR OR PAY OVER THOSE TAXES.

26 U.S.C. §§ 3102(a) and 3402(a) require employers to withhold the employees' share of federal social security taxes and income taxes from the wages of their employees.  The money withheld from each employee's wages is then held by the employer in trust for the benefit of the United States as provided for by 26 U.S.C. § 7501(a).  *Slodov v. United State*s, 436 U.S. 238, 242-43 (1978); *Turnbull v. United States*, 929 F.2d 173 (5th Cir. 1991).

If the payroll taxes are not paid by the company, in this case Jubilee, this revenue would be forever lost to the Government, unless the Government can collect these taxes from the persons responsible for the collection and nonpayment of the taxes. *Slodov*, 436 U.S. at 243-45; *USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1242-43 (5th Cir. 1986).  To protect against such revenue losses, Section 6672(a) was enacted by Congress. *USLIFE Title*, 784 F.2d at 1243.  26 U.S.C. § 6672 reads, in pertinent part:

> GENERAL RULE.--Any person required to collect, truthfully account for, and
> pay over any tax imposed by this title who willfully fails to collect such tax, or
> truthfully account for and pay over such tax, or willfully attempts in any

manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over...

The Supreme Court in *Slodov*, when interpreting Section 6672, held that:

We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and **not** to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question.

*Slodov*, 436 U.S. at 250.  (Emphasis added.)  Michael and Angela Umeorah are the type of "person" referred to in both the statutes and *Slodov*.

There are two elements to liability under Section 6672.  The first is that a person upon whom liability is to be imposed must be a person required to collect, truthfully account for, or pay over any tax, commonly referred to as a "responsible person".  The second requirement under Section 6672 is that such responsible person willfully failed to collect, truthfully account for or pay over such taxes. *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1453 (5th Cir. 1993); *Turnbull*, 929 F.2d at 178.  The Umeorahs bear the burden of proof on both of these issues.

[O]nce the Government offers an assessment [of penalty taxes] into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness." *Barnett*, 988 F.2d at 1453 (citations omitted); *see also Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir. 1979) (citing *Anderson v. United States,* 561 F.2d 162, 165 (8th Cir. 1977); *Liddon v. United States*, 448 F.2d 509, 513-14 (5th Cir. 1971).

*Arriondo,* 196 F.Supp.3d at 721.

B.  MICHAEL AND ANGELA UMEORAH ARE RESPONSIBLE PERSONS WITH RESPECT TO JUBILEE UNDER SECTION 6672 FOR EACH OF THE QUARTERS AT ISSUE.

There is no dispute that Michael and Angela Umeorah were responsible persons during the periods that they were residing in Houston; however, they dispute that they were responsible persons during the periods they were in Nigeria.  But the Umeorahs still had the requisite authority and control over Jubilee during the time they were in Nigeria.  Both Michael and Angela traveled to the Houston area during this period and continued to be owners and directors.Thus, they could have made sure the payroll deposits were made.  Instead, they left this responsibility for Ulasi and Denchukwu.  Michael testified that he hoped that the taxes would be paid when he left for Nigeria.  Yet he maintains that all the owners and directors (which presumably includes himself) have the authority to insure the taxes be paid.  The Umeorahs cannot delegate the tax paying responsibility to someone else because the holding of employees' taxes is considered a duty that cannot be delegated.  *Johnson v. United States*, 565 F.Supp. 253, 256-259 (S.D. Tex. 1983) *citing Hornsby v. IRS*, 588 F.2d 952, 953 (5th Cir. 1979); *see also Rogers v. United States*, 2015 WL 1472342 (S.D. Tex. 2015).

The United States obtained a judgment that Ulasi and Denchukwu were responsible persons of Jubilee.  However, the law is not limited to the single individual who is most responsible.  Even though Ulasi and Denchukwu are responsible persons, that does not absolve the Umeorahs from also being found to be responsible persons.

> Moreover, the statute expressly applies to "any" responsible persons, not just to the person *most* responsible for the payment of the taxes.  *Howard*, 711 F.2d at 737.  There may be – indeed, there are – multiple responsible persons in any company.

*Barnett v. Internal Revenue Service,* 988 F.2d at 1455.  In the seminal case of *Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979), the Fifth Circuit affirmed the district court's granting of summary judgment in favor of the United States, finding that seven individuals were responsible persons as a matter of law.  Another district court in Texas noted this law when it held that a

"responsible person is any person who performs any of the three functions specified in the statute (i.e., collect, truthfully account for, or pay over the withheld taxes)."  *Hutchinson v. United States*, 962 F.Supp 965, 968 (N.D.Tex. 1997).

"This Circuit takes a broad view of who is a responsible person under § 6672."  *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999); *Barnett*, 988 F.2d at 1454; *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir. 1989).  The crucial inquiry is whether the individual had the effective power to pay the taxes.  *Barnett*, 988 F.2d at 1454; *Turnbull*, 929 F.2d at 178. "We first observe that cases *not* finding § 6672 responsibility are relatively few and far between." *Barnett*, 988 F.2d at 1456.  (Emphasis in original).

Responsibility for purposes of Section 6672 is a matter of status, duty, power and authority, whether exercised or not.  *Wood v. United States*, 808 F.2d 411, 415 (5th Cir. 1987); *Howard v. United States*, 711 F.2d 729, 734 (5th Cir. 1983).  It is not necessary that an individual have the final, or sole, word as to which creditors should be paid in order to be subject to liability under Section 6672.  *Verret*, 542 F.Supp.2d at 534.  In fact, "responsibility does not require knowledge that one has that duty and authority."  *Barnett,* 988 F2d at 1454.  Rather, it is sufficient that the person have some power, authority, and control over the process by which corporate funds are disbursed to find that he is a "responsible person" under Section 6672. *Neckles v. United States*, 579 F.2d 938 (5th Cir. 1978).

Responsible person status is not limited to people who perform the mechanical jobs of collection and payment of the corporate funds.  The Fifth Circuit looks at a number of circumstantial indicia of responsible person status when a party lacks the precise responsibility of withholding or paying the taxes.  *Barnett*, 988 F.2d at 1455.  In *Barnett*, the Court noted that:

> ... we cannot ignore the extensive case law that narrowly constrains a factfinder's province in § 6672 cases. [W]e tend to agree with the other circuits

24

that have held that certain facts will almost invariably prove dispositive of responsibility.

*Barnett*, 988 F.2d at 1454. Recognized indicia of responsible person status include the following:

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. (Citations omitted.)  No single factor is dispositive.

*Id*. at 1455.  Both Michael and Angela Umeorah have a number of these indicia of responsibility. As shown above, both were directors and owners, both had the authority to hire and fire employees, both could direct payment and both possessed the authority to sign company checks. Additionally, both had the authority to enter into contracts, had the authority to deposit payroll taxes and to manage employees.  Michael also prepared payroll and computed the payroll taxes, signed and filed Form 941 payroll tax returns as well as Forms 1120 for Jubilee and managed the day-to-day operations of Jubilee.  But, the overwhelming factor in determining their responsibility is that they had the effective power to see that the taxes were paid.  This is shown by their ability to make payments at times towards Jubilee's payroll taxes.[127]  Further, they received a salary during the period taxes were not being paid.

Michael and Angela assert that they were not involved in Jubilee during their time in Nigeria.  But there is no dispute that they formed Jubilee and were the owners and directors during the periods at issue.  Prior to and after their return from Nigeria, they had access to Jubilee's bank accounts as signatories on the accounts.  It is also not disputed that they made numerous visits to and maintained a home in Houston during the periods they were in Nigeria.

---

[127] *See* Exh. 17.

Further, the Umeorahs filed income tax returns and reported income earned in the United States during the periods they were away.  Additionally, the Umeorahs could contact Ulasi and Denchuku by telephone at any point during their time in Nigeria.[128]

Michael Umeorah and Angela Umeorah are responsible persons under Section 6672 as a matter of law because they had the effective power to pay the taxes. The Court should grant summary judgment on the issue of responsibility as to all of the 31 listed periods.

C.  MICHAEL AND ANGELA UMEORAH WILLFULLY FAILED TO COLLECT, ACCOUNT FOR OR PAY OVER THE TRUST FUND TAXES OF JUBILEE.

Liability attaches to a "responsible person" under Section 6672 only upon his "willful" failure to collect or account for or pay over the payroll taxes.  As shown above, the Umeorahs admitted that they were aware of Jubilee's payroll tax liabilities as early as 2003.  Further, the Umeorahs were present at meetings where the unpaid payroll taxes were discussed.  The Umeorahs were also aware that other expenses were being paid while the taxes were not being paid.  The Umeorahs had actual knowledge that Jubilee was not paying its payroll taxes.

Under Fifth Circuit precedent, if the Umeorahs paid **any** creditor other than the IRS after they were aware of the non-payment of the taxes, they acted willfully as a matter of law.  As the Fifth Circuit held decades ago in *Mazo*, 591 F.2d at 1157:

> evidence that the responsible person had knowledge of payment to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness.

The holding in *Mazo* has been followed and discussed in numerous subsequent cases.  One of those cases, which has also been cited numerous times, is *Barnett*, where the Fifth Circuit held

---

[128] Both Ulasi and Denchukwu testify that the Umeorahs were apprised of all developments and were consulted on all major decisions regarding Jubilee while they were in Nigeria. Ulasi's Dep. at 37-40, 45-46; Denchukwu's Dep. at 21-23; *see also* Angela's Dep. at 42.

that a considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by the

payments made to other creditors in the knowledge that the taxes are due, is all that is required to

establish willfulness:

> Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent. *Mazo*, 591 F.2d at 1154; *see also Gustin*, 876 F.2d at 492. Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States. *Gustin*, 876 F.2d at 492. "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." *Howard*, 711 F.2d at 736.

988 F.2d at 1457.  *Barnett* has been cited for this rule of law by a district court in Texas as

recently as April, 2016, in *Behrman v. United States,* 179 F.Supp.3d 738 (E.D. Tex. 2016).

> As stated by another district court in this district:

> "When a responsible person becomes aware of tax liability, he has 'a duty to ensure that the taxes [are] paid before any payments [are] made to other creditors.' "*Conway*, 647 F.3d at 234 (quoting *Barnett*, 988 F.2d at 1457). Thus, "[a] responsible person acts willfully if 'he knows the taxes are due but uses corporate funds to pay other creditors' or 'he recklessly disregards the risk that the taxes may not be remitted to the government.'" *Id.* (quoting *Logal v. United States*, 195 F.3d 229, 232 (5th Cir.1999)). "Where there is undisputed evidence that the responsible person directed payments to other creditors while knowing of the tax deficiency, willfulness is established as a matter of law." *Id.*

*Zarate v. United States,* 2012 WL 4482048 (S.D. Tex. Sep. 26, 2012).

A district court in Texas, when granting summary judgment in favor of the United States,

noted this rule of law:

> Once Ortiz "became aware of the tax liability, he had a duty to ensure that the taxes were paid before any payments were made to other creditors." *Barnett*, 988 F.2d at 1457. The IRS' evidence, that he failed to do so, establishes willfulness **as a matter of law**. *Id.* (citing *Howard*, 711 F.2d at 735).

*Lencyk*, 384 F.Supp.2d at 1036.  (Emphasis added.)

All that is required for a finding that the Umeorahs acted willfully is to show that they voluntarily, consciously and intentionally preferred any other creditor over the United States after being aware of the unpaid taxes. They have admitted doing so and this admission is evidenced by checks made out to other creditors.[129] They were aware that the taxes were not being paid while making payroll, as well as payments to other creditors for operating expenses.

The Umeorahs are willful under Section 6672 as a matter of law.

D.   THE UMEORAHS ARE LIABLE FOR THE INCOME TAX LIABILITIES

The Umeorahs do not dispute that they owe the income tax liabilities at issue in this suit.  An IRS Certificate of Assessment and Payments (Form 4340) shows presumptively correct tax assessments and establishes a prima facie case of liability on the part of the taxpayer.  *McCarty v. United States,* 929 F.2d. 1085 (5th Cir. 1991).  The Umeorahs' assessed federal income tax liabilities, and accruals, are duly owed and remain unpaid.  The United States is entitled to reduce these liabilities to judgment.  With interest and statutory additions through December 2017, the Umeorahs' joint income tax liability (Forms 1040) for the tax years 2004-2007, 2009, 2010 and 2014 total $124,007.05.

E.   THE UNITED STATES IS ENTITLED TO FORECLOSE ITS TAX LIENS AGAINST THE UMEORAHS' REAL PROPERTY

The assessment of the Umeorahs' federal tax liabilities created federal tax liens against all of their property and rights to property.  26 U.S.C. § 6321.  Treas. Reg. § 301.6321-1 provides that the "lien attaches to all property and rights to property belonging to such person at any time during the period of the lien, including, any property or rights to property acquired by such

---

[129] See Exhs. 16, 17, 18, O and P.

persons after the lien arises." This lien continue until the federal tax debt is satisfied or becomes

unenforceable, 26 U.S.C. § 6322. Under 26 U.S.C. § 7403, the United States may enforce its tax

lien through a foreclosure sale. *See* Treas. Reg. § 301.7403-1.

Angela and Michael Umeorah are the owners of the real property located at 29 Old

Windsor Way, Sugar Land, Texas 77479 (Old Windsor Way property) and described as follows:

> Lot Twelve (12), in Block One (1), of Avalon Waters of Avalon, Section Two (2),
> an Addition in Fort Bend County, Texas, according to the map or plat thereof
> recorded in slide no. 1725/A & B, of the map/plat records of Fort Bend County,
> Texas

The United States' tax liens establish its position as a secured creditor with respect to this

property and the United States is entitled to have the property sold with the sales proceeds

distributed in accordance with the lien priority interest determined by this Court.

F.   FORECLOSURE ON THE OLD WINDSOR WAY PROPERTY.

The Court has broad discretion in setting the terms and conditions of a sale under 28

U.S.C. §2001. *United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir.), *cert. denied*, 391

U.S. 966 (1968); *United States v. Heasley*, 283 F.2d 422 (8th Cir. 1960); *United States v.*

*Hunwardsen*, 39 F.Supp. 2d 1157 (N.D. Iowa 1999). The United States requests that it may sell

the property through a real estate agent acting as a Receiver or through a IRS Property Appraisal

Liquidation Specialist (PALS). A separate order of sale enforcing the judgment against the real

property will be presented by a motion.

G.   DISTRIBUTION OF SALES PROCEEDS.

As previously stated, the United States is entitled to have the Old Windsor Way property sold

with the sales proceeds distributed in accordance with the lien priority/ownership interests

determined by this Court. In accordance with those lien priority/ownership interests, the sale

proceeds should be applied first to any costs associated with the foreclosure sale and second to

any outstanding *ad valorem* taxes.  Third, the proceeds should be applied to satisfy the

Umeorahs' debt to The Bank of New York Mellon.[130]  Fourth, the proceeds should be applied to

the Umeorahs' Form 1040 federal income tax liabilities for the years 2004- 2007, 2009, 2010

and 2014 and towards Michael and Angela Umeorahs' trust fund recovery penalties.  Finally, if

any funds remain they should be paid to the Umeorahs.

## IX. CONCLUSION.

Based on the above undisputed material facts and the applicable precedent, Michael and

Angela Umeorah were responsible persons of Jubilee under Section 6672 for the 31 periods

spanning the fourth quarter of 2003 through the first quarter of 2015 as listed in this motion.

Their failure to collect, account for, or pay over the payroll taxes for the periods at issue was

willful.  The Court should enter judgment in favor of the United States for the amount of the trust

fund recovery period assessments for the 31 periods and find that Michael Umeorah is indebted

to the United States in the amount of $1,016,554.81 as of December 11, 2017, plus pre-judgment

and post judgment interest[131] thereon until paid and Angela Umeorah is indebted to the United

States in the amount of $1,016,803.00 as of December 11, 2017, plus pre-judgment and post

judgment interest[132] thereon until paid.

Additionally the Court should enter judgment in the favor of the United States and find that

Michael Umeorah and Angela Umeorah are jointly liable for income taxes for the tax years

---

[130] *See* Stipulation of Lien Priority, ECF #52.
[131] Prejudgment interest accrues on the amount from December 11, 2017, until the date of judgment at the rates set forth in 26 U.S.C. § 6601 and 6621.  Post-judgment interest under 28 U.S.C. § 1961(c) accrues at the same rates under 26 U.S.C. §§ 6601 and 6621 until paid.
[132] *Id.*

2004-2007, 2009, 2010 and 2014 in the total amount of $124,007.05 as of December 11, 2017, plus pre-judgment and post judgment interest[133].

Additionally, the Court should enter judgment that the United States has valid liens.  Further, the Court should order the sale of the property located at Old Windsor Way, with the sales proceeds applied:

> a. first, to the IRS for the costs of the sale;
>
> b. second, to any *ad valorem* taxes due and owing on the property;
>
> c. third, to satisfy the Umeorahs' debt to The New York Bank of Mellon;
>
> d. fourth to satisfy the Umeorahs' Form 1040 federal income tax liabilities for the years 2004-2007, 2009, 2010 and 2014 and the trust fund recovery penalties listed in the Complaint;
>
> e. fifth, any balance shall be paid over to the Umeoerahs.

> Ryan K. Patrick
> United States Attorney
>
> /s/ Stephanie M. Page
> STEPHANIE M. PAGE
> Attorney, Tax Division
> State Bar No. 13428240
> Department of Justice
> 717 N. Harwood, Suite 400
> Dallas, Texas 75201
> 214-880-9749
> 214-880-9741
> Stephanie.M.Page@usdoj.gov
>
> ATTORNEYS FOR THE UNITED STATES

---

[133] *Id.*

## **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following has been made on September 26, 2018, via ECF notification:

Cornel A. Williams
1405 Palm Street
Houston, Texas 77004

Jeffrey Seewald
Amanda Laviage
McGlinchey Stafford
1001 McKinney Street, Suite 1500
Houston, Texas 77002

 /s/ Stephanie M. Page
STEPHANIE M. PAGE