**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-17-1164 |
| | § | |
| CHRIS C. ULASI, *et al.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a civil tax-enforcement case. The United States sued Chris Ulasi, Michael Umeorah and his wife, Angela Umeorah, Nina Denchukwu, and the Bank of New York Mellon, seeking to collect unpaid federal payroll and income-tax assessments. (Docket Entry Nos. 1, 10). The government seeks the assessments levied against the Umeorahs and a declaration that the federal tax liens attach to their real property. The government moved for summary judgment against the Umeorahs under Federal Rule of Civil Procedure 56(c), the Umeorahs responded, the government replied, and the Umeorahs surreplied. (Docket Entry Nos. 60–62, 64). Based on the pleadings, the motions, the parties' briefs, the record, and the applicable law, the court enters summary judgment for the government. The government is ordered to file a motion to enforce the liens and foreclose on the property, and file a calculation of prejudgment and postjudgment interest, by **January 25, 2019**. The reasons are explained in detail below.

**I. Background**

In 1998, Ulasi, the Umeorahs, and Denchukwu founded Jubilee Group Home, Inc. to provide home healthcare to individuals with intellectual disabilities. (Docket Entry No. 60-1 at 7; Docket

Entry No. 60-31 at 17; Docket Entry No. 61 at 2). The defendants owned equal shares of Jubilee and served as its directors. (Docket Entry No. 60-1 at 7; Docket Entry No. 60-17 at 24–26). Ulasi, the Umeorahs, and Denchukwu purchased homes in South Texas and leased the properties to Jubilee, which made the mortgage payments on the purchasers' behalf. (Docket Entry No. 60-1 at 8–9; Docket Entry No. 60-17 at 34–35; Docket Entry No. 60-18 at 35:12–17). Michael and Angela Umeorah each owned three of Jubilee's group homes. (Docket Entry No. 60-1 at 8; Docket Entry No. 17 at 28–29; Docket Entry No. 35:5–7, 46:1–5).

Jubilee made money by contracting with Medicaid to treat patients living in the properties. (Docket Entry No. 60-18 at 34:17–19; Docket Entry No. 60-31 at 18). Jubilee established branches in Beaumont, Corpus Christi, Houston, and McAllen. (Docket Entry No. 60-1 at 8; Docket Entry No. 60-17 at 27:13–17). Jubilee filed for bankruptcy in May 2007 after incurring Internal Revenue Service debt and closing its Corpus Christi and McAllen locations. (Docket Entry No. 60-1 at 8; Docket Entry No. 60-31 at 2). In July 2008, the Texas Department of Aging and Disability denied certification of Jubilee's Medicaid agreement. (Docket Entry No. 60-1 at 8; Docket Entry No. 60-31 at 18). Since July 2008, Jubilee has operated only in Beaumont. (Docket Entry No. 60-1 at 8; Docket Entry No. 60-18 at 30:1–3).

Michael Umeorah was Jubilee's president from 1998 to May 2007. (Docket Entry No. 60-1 at 7; Docket Entry No. 60-31 at 17). Ulasi succeeded him as president and supervised Jubilee's day-to-day operations. (*Id.*). It is unclear whether Ulasi is still Jubilee's president, but the record shows that Michael Umeorah resumed managing Jubilee's affairs in December 2013. (Docket Entry No. 60-1 7; Docket Entry No. 60-18 at 40:1–2). Although Michael Umeorah and Ulasi both ran Jubilee and set its financial policy, each director had independent authority over Jubilee's

operations. (Docket Entry No. 60-1 at 9; Docket Entry No. 60-18 at 37:21–24; Docket Entry No. 60-22 at 26–28). Ulasi, the Umeorahs, and Denchuwuku could all hire and fire employees, pay Jubilee's bills, contract on Jubilee's behalf, set salaries, and make federal-tax deposits. (Docket Entry No. 60-1 at 9–10). They received compensation for their work as directors, and Angela Umeorah received a salary for working as a nurse. (Docket Entry No. 60-1 at 7, 13; Docket Entry No. 60-17 at 38:11–13).

Jubilee began accumulating tax debt in 1998. (*Id.* at 8; Docket Entry No. 60-18 at 28:21–24). By 2007, Jubilee owed $1.25 million in unpaid employee payroll taxes. (Docket Entry No. 60-1 at 8; Docket Entry No. 60-49 at 1). Michael Umeorah and Ulasi calculated the payroll and determined the payroll-tax amounts Jubilee deposited from 1998 to 2006. (Docket Entry No. 60-1 at 10; Docket Entry No. 60-48 at 1; Docket Entry No. 60-50 at 1). Umeorah and Ulasi prepared, reviewed, or signed the payroll-tax returns from 1998 to 2015. (*Id.*). While Umeorah and Ulasi did the work for Jubilee's payroll, any director could authorize paying the payroll, paying the payroll taxes, and signing the payroll-tax returns. (*Id.*). Ulasi, Denchukwu, and the Umeorahs knew of Jubilee's failure to satisfy its tax obligations. (*Id.* at 11).

Angela Umeorah lived in Nigeria from 2004 to 2012. (Docket Entry No. 60-1 at 14; Docket Entry No. 60-17 at 19:21–23, 43:1–21). During these years, she visited Houston periodically to see family and to work as a nurse for a local hospital. (Docket Entry No. 60-1 at 14; Docket Entry No. 60-17 at 21:7–15). She knew that Jubilee had not paid its taxes before she departed, and she learned that it continued to fail to pay its taxes when she returned to the United States in 2012. (Docket Entry No. 60-1 at 14; Docket Entry No. 60-17 at 54:16–11, 56:6–10). In March 2012, Angela Umeorah worked with the Internal Revenue Service to pay down Jubilee's tax debt. She also

authorized multiple payments of Jubilee's federal taxes. (Docket Entry No. 60-1 at 14; Docket Entry No. 60-17 at 59–60; Docket Entry No. 35 at 1–4, 6, 8–11, 19, 21, 23, ).

Michael Umeorah lived in Nigeria from 2006 to 2013. (Docket Entry No. 60-1 at 11; Docket Entry No. 61 at 2). He visited Houston frequently, often staying for two weeks or longer. (Docket Entry No. 60-1 at 11; Docket Entry No. 60-18 at 63:3–10). Michael Umeorah knew that Jubilee owed taxes before he left for Nigeria, but he hoped that Ulasi and Denchukwu would take care of the debt while he was away. (Docket Entry No. 60-1 at 12; Docket Entry No. 60-18 at 42:19–21). When he returned to Houston in 2013, he and Ulasi negotiated a repayment plan with the Internal Revenue Service. (Docket Entry No. 60-1 at 13; Docket Entry No. 60-18 at 32–33).

While in Nigeria, the Umeorahs filed personal income-tax returns and made mortgage payments on their home in Sugar Land, Texas. (Docket Entry Nos. 60-37, 60-38, 60-39, 60-40, 60-41, 60-42, 60-43, 60-44, 60-45, 60-46). They kept Jubilee's books and bank statements at their residence, which was the company's mailing address. (Docket Entry No. 60-1 at 12; Docket Entry No. 60-17 at 40–41).

Although the Umeorahs pursued other business ventures in Nigeria, they maintained ownership of Jubilee and continued to serve as directors. (Docket Entry No. 60-1 at 12–13; Docket Entry No. 60-17 at 125–26; Docket Entry No. 60-18 at 75–76). Even though Michael and Angela Umeorah were not signatories on Jubilee's bank accounts from May 2007 to January 2013, Ulasi kept them informed of Jubilee's business developments while they were abroad. (Docket Entry No. 60-1 at 9 n.35, 12; Docket Entry No. 60-17 at 19–25; Docket Entry No. 60-21 at 5–7).

Michael Umeorah took control of Jubilee's accounts in 2014. (Docket Entry No. 60-1 at 12; Docket Entry No. 60-18 at 40:1–2). From 2014 to 2018, Michael and Angela Umeorah made

multiple payments to Jubilee's creditors, other than the government, after learning of the unpaid tax debt.  (Docket Entry No. 60-1 at 17–18; Docket Entry No. 60-17 at 90–93; Docket Entry No. 60-25 at 2–31; Docket Entry No. 60-26 at 2–6; Docket Entry No. 60-36 at 17).

In April and May 2007, the Internal Revenue Service assessed trust-fund-recovery penalties against Ulasi, Denchukwu, and Michael and Angela Umeorah under 26 U.S.C. § 6672, alleging that they were liable for Jubilee's failure to pay federal payroll taxes for the 31 quarters from December 31, 2003, to March 31, 2015.  (Docket Entry No. 1; Docket Entry No. 60-1 at 3–6).  The Internal Revenue Service also assessed penalties against each defendant for failing to pay personal income taxes from 2004 to 2014.  (Docket Entry No. 60-1 at 6).  As of December 11, 2017, Michael and Angela Umeorah's unpaid balances for the trust-fund-recovery penalties are $1,016,554.81 and $1,016,803.00, respectively.  (Docket Entry No. 60-1 at 3, 6).  Their joint income-tax assessment penalties total $124,007.05.  (Docket Entry No. 60-1 at 6; Docket Entry No. 60-20 at 1–41).  The government recorded tax liens against the Umeorahs' home in Sugar Land for the joint income-tax penalties and the individual trust-fund-recovery assessments.  (Docket Entry No. 60-1 at 18–19; Docket Entry No. 60-28 at 1–8; Docket Entry No. 60-29 at 1–10; Docket Entry No. 60-30 at 1–10).

In April 2017, the government sued Ulasi, Denchukwu, and the Umeorahs to recover the assessments and to foreclose on the Umeorahs' property.  (Docket Entry No. 1).  The court entered default judgments against Ulasi and Denchukwu in September 2017, after they failed to answer the government's amended complaint.  (Docket Entry No. 23).

In September 2018, the government moved for summary judgment against the Umeorahs.  (Docket Entry No. 60).  The government argues that the undisputed facts show that Michael and Angela Umeorah are liable under § 6672 to pay the trust-fund-recovery penalties because they were

"responsible persons" who "willfully" failed to deposit Jubilee's payroll taxes. (Docket Entry No. 60-1 at 2).

The Umeorahs dispute their liability to pay the assessments on the grounds that they lacked access to Jubilee's accounts and that Ulasi misled them as to the unpaid tax debt. (Docket Entry No. 61 at 6). The government replied, and the Umeorahs surreplied. (Docket Entry Nos. 62, 64). The government then moved to strike the Umeorahs' surreply, contending that it is untimely and restates arguments already made in their response. (Docket Entry No. 65).

The parties' arguments, the record, and the applicable case law are considered below.

## II. The Standard of Review

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir.

2015)).  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  A fact is material if "its resolution could affect the outcome of the action."  *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence.").  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

## III.    Analysis

### A.    The Government's Motion to Strike the Umeorahs' Surreply

The government argues that the surreply is untimely under this court's Local Rules because it was filed 43 days after the government submitted its summary judgment motion.  (Docket Entry No. 65 at 2–3).  The government contends that the surreply fails to address the reply and is instead "just a repackaging and re-emphasis on the same arguments [the Umeorahs] made in their response, with cites to deposition testimony."  (*Id.* at 2).  According to the government, the surreply should be stricken because the government "did not make new arguments in its reply that . . . require additional response from [the Umeorahs] to assist this Court in determining the issue."  (*Id.*).  The Umeorahs did not respond.

The surreply is not only untimely, it is unwarranted.  "A surreply is appropriate 'only when the movant raises new legal theories or attempts to present new evidence at the reply stage.'" *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. H-16-2746, 2017 WL 3840262, at *2 (S.D. Tex. Sept. 1, 2017) (quoting *Makhlouf v. Tailored Brands, Inc.*, No. H-16-838, 2017 WL 1092311, at *5 (S.D. Tex. Mar. 23, 2017)).  The government's reply raised no new arguments or evidence.  (*See* Docket Entry No. 62).  Although the surreply includes a few additional facts and some citations to deposition testimony, it mostly parrots the response.  (*See* Docket Entry No. 64).  Curing deficiencies in a response—which this surreply does not accomplish—is not a proper basis for a surreply.  *ENGlobal*, 2017 WL 3840262, at *2.

Even if the surreply's content was proper, it was also untimely.  In the Southern District of Texas, parties must response to opposed motions within 21 days of the filing of the motion.  L.R. 7.3.  Replies are due "within 7 days from the date the response is filed."  L.R. 7.4(E).  Without

requesting leave, the Umeorahs surreplied 22 days after the government replied on October 22, 2018. (Docket Entry Nos. 62, 64).

The court grants the government's motion to strike, noting that considering the surreply would affect neither the analysis nor the outcome. (Docket Entry No. 65).

### B.    The Government's Motion for Summary Judgment[1]

Businesses are required to withhold from employees' earnings the amount each owes for federal social security and income taxes. 26 U.S.C. §§ 3102, 3402. Employers hold the funds "in trust" for the government. 26 U.S.C. § 7501(a). "Such funds, which are remitted to the government on a quarterly basis, are for the exclusive use of the United States and are not available to cover operational or business expenses." *Verret v. United States*, 542 F. Supp. 2d 526, 533 (E.D. Tex.

---

[1] The summary judgment evidence includes: the declaration of Stephanie Paige, the trial attorney assigned to this case from the Department of Justice, Tax Division, Southwestern Section, (Docket Entry No. 60-3); the declaration of Francis Nwobodo, a revenue officer with the Internal Revenue Service in the Houston office, (Docket Entry No. 60-4); transcripts of the trust-fund-recovery penalties for the Umeorahs, (Docket Entry Nos. 60-5, 60-6, 60-7, 60-8); certified Forms 4340 of the trust-fund-recovery penalties for Michael Umeorah, (Docket Entry No. 60-9, 60-10, 60-11, 60-12); certified Forms 4340 of the trust-fund-recovery penalties for Angela Umeorah, (Docket Entry Nos. 60-13, 60-14, 60-15, 60-16); deposition testimony of Angela Umeorah, (Docket Entry No. 60-17); deposition testimony of Michael Umeorah, (Docket Entry No. 60-18); transcripts of the Umeorah Form 1040 liabilities, (Docket Entry No. 60-19); certified Forms 4340 of the Umeorahs' Form 1040 liabilities, (Docket Entry No. 60-20); deposition testimony of Chris Ulasi, an owner and director of Jubilee, and the Umeorahs' codefendant, (Docket Entry No. 60-21); deposition testimony of Nina Denchukwu, an owner and director of Jubilee, and the Umeorahs' codefendant, (Docket Entry No. 60-22); the declaration of Arvy McKinney, a Jubilee employee, (Docket Entry No. 60-23); copies of payroll checks to Michael Umeorah, (Docket Entry no. 60-24); copies of checks signed by Michael Umeorah, (Docket Entry No. 60-25); copies of checks signed by Angela Umeorah, (Docket Entry No. 60-26); the general warranty deed conveying to the Umeorahs the real property at 29 Old Windsor Way, Sugar Land, Texas 77479, (Docket Entry No. 60-27); notices of federal tax liens, (Docket Entry Nos. 60-28, 60-29, 60-30); the amended disclosure statement filed in Jubilee's May 2007 bankruptcy, (Docket Entry No. 60-31); the petition and schedules from Jubilee's May 2007 bankruptcy, (Docket Entry No. 60-32); signature cards for Jubilee's account with Wells Fargo Bank, N.A. ending in 8699, (Docket Entry No. 60-33); statements for Jubilee's account with Wells Fargo ending in 8699, (Docket Entry No. 60-34); copies of checks signed by Angela Umeorah, (Docket Entry No. 60-35); statements and checks for Jubilee's account with Wells Fargo ending in 2496, (Docket Entry No. 60-36); the Umeorahs' Form 1040s from 2005 to 2015, (Docket Entry Nos. 60-37, 60-38, 60-39, 60-40, 60-41, 60-42, 60-43, 60-44, 60-45, 60-46, 60-47); Form 4180 for Michael Umeorah, (Docket Entry No. 60-48); Form B10 for proof of claim in Jubilee's bankruptcy, (Docket Entry No. 60-49); and Form 4180 for Chris Ulasi, (Docket Entry No. 60-50).

2008) (citing 26 U.S.C. §§ 3102(b), 3403, 7501(a)). "[T]he funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors." *Slodov v. United States*, 436 U.S. 238, 243 (1978). "Failing to withhold or remit the funds can result in civil and criminal penalties." *McClendon v. United States*, 892 F.3d 775, 782 (5th Cir. 2018) (citing 26 U.S.C. §§ 6672, 7202)).

The government seeks to recover the penalties assessed against the Umeorahs under § 6672, which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Instead of punishing the business entity, § 6672 penalizes "officer[s] or employee[s] [who are] under a duty to" collect, account for, and pay the tax. 26 U.S.C. § 6671(b). To establish liability, the government must prove that the officer or employee "is a 'responsible person' who 'willfully' failed to pay over the withheld taxes." *Barnett v. I.R.S.*, 988 F.2d 1449, 1453 (5th Cir. 1993) (quoting *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir. 1991)).

"In § 6672(a) cases, once the [g]overnment offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness." *Id.* (citing *Morgan v. United States*, 937 F.2d 281, 285 (5th Cir. 1991)). "This rule applies when," as here, "the [g]overnment initiates the action by filing suit to convert the assessment into a judgment." *McClendon*, 892 F.3d 783.

### 1.     Were the Umeorahs "Responsible Persons"?

The Fifth Circuit "generally takes a broad view of who is a responsible person under §

6672." *Gustin v. I.R.S.*, 876 F.2d 485, 491 (5th Cir. 1989).  Responsibility "is determined by looking

to one's status within a corporation—that is, one's duty and authority to withhold and pay taxes."

*Barnett*, 988 F.2d at 1454.  It "does not require knowledge that one has that duty and authority."

*Id.*  Because responsibility does not turn on actual knowledge, an individual "may be a responsible

person . . . even though he does not know that withholding taxes have not been paid, and he does

not cease to be a responsible person merely by delegating the responsibility to others."  *Id.* at

1454–55.  Indicia of responsible-person status, none of which is dispositive, include whether the

individual: (1) "is an officer or member of the board of directors"; (2) "owns a substantial amount

of stock in the company"; (3) "manages the day-to-day operations of the business"; (4) "has the

authority to hire or fire employees"; (5) "makes decisions as to the disbursements of funds and

payment of creditors"; and (6) "possesses the authority to sign company checks."  *Id.* at 1455.

While one individual might have more power than other directors, officers, or employees to

withhold and pay taxes, "[t]here may be—indeed, there usually are—multiple responsible persons

in any company."  *Id.*  The issue is "whether the person had the effective power to pay the taxes."

*McClendon*, 892 F.3d at 783 (quotation omitted).  The issue here is whether the Umeorahs did, or

"by virtue of [their positions in Jubilee], could have had[,] 'substantial' input into such decisions."

*Barnett*, 988 F.2d at 1455.

### i.     Michael Umeorah

The government argues that Michael Umeorah is a "responsible person" under § 6672

because, during the 31 quarters at issue, he was a member of Jubilee's board of directors and owned

25 percent of its stock; managed Jubilee's day-to-day operations; had the authority to hire and fire employees; directed payments to creditors; and had the authority to sign company checks. (Docket Entry No. 60-1 at 25). The government contends that Michael Umeorah had the effective power to pay the payroll taxes because he actually deposited payments towards Jubilee's unpaid tax debt. (*Id.*). According to the government, the record shows that Michael Umeorah also prepared, signed, and transmitted payroll tax returns. (*Id.*).

Acknowledging that Michael Umeorah lived in Nigeria from 2006 to 2013, the government argues that he was still a "responsible person" while abroad because he maintained his ownership of Jubilee and his membership on its board of directors; he was a signatory on Jubilee's accounts before and after moving to Nigeria; he made lengthy and frequent visits to Houston; he maintained his home in Sugar Land; he filed tax returns and reported income earned in the United States; and he could, and did, contact Ulasi and Denchukwu by phone, all while living in Nigera. (*Id.* at 25–26).

Michael Umeorah responds that he was not a "responsible person" when he lived in Nigeria because he did not have access to Jubilee's accounts from May 2007 to January 2013 and did not effectively have the power to pay the payroll taxes during that period. (Docket Entry No. 61 at 3). Michael Umeorah argues that because he was not a signatory on the accounts, he was "unaware of the continued tax issues Jubilee was facing." (*Id.*). Because he lacked knowledge of Jubilee's affairs, he contends, he had to rely on Ulasi to make sure the taxes were paid. (*Id.* at 4). According to Michael Umeorah, "Ulasi deceived [him during] the entire time [he and his wife] were in Nigeria." (*Id.*). Conceding that he was an owner and director during the 31 quarters at issue, Michael Umeorah argues that he had authority in name only, and that Ulasi controlled Jubilee from May 2007 to January 2013. (*Id.*).

The government replies that access to company accounts is not necessary to find an individual a "responsible person." (Docket Entry No. 62 at 2). The government argues that Michael Umeorah did not dispute that he was a signatory on Jubilee's accounts for 14 of the 31 quarters at issue. The government supports its argument that Umeorah was a "responsible person," including during his time in Nigeria, because other facts, including his ownership of Jubilee and his position as a director, show that he had the power to pay the payroll taxes. (*Id.*). The government contends that because Michael Umeorah took over Jubilee's accounts in 2013, the reason he did not access company funds while abroad was because he chose not to or because he lacked interest or diligence, not because Ulasi removed him from the accounts. (*Id.* 2–3). According to the government, Michael Umeorah's response failed to cite evidence showing a genuine factual dispute material to determining whether he was a "responsible person," and he "cannot survive a motion for summary judgment by resting on the mere allegations of [his] pleadings." (*Id.* at 3).

Michael Umeorah fails to satisfy his burden under Rule 56. The government's motion demonstrated the absence of a factual dispute material to finding Umeorah a responsible person. Umeorah must "identify specific evidence in the summary judgment record" supporting an inference that he was not responsible. *Forsyth*, 19 F.3d at 1533. His four-page response neither identifies nor provides competent summary judgment evidence to meet this burden. Instead, his response presents conclusory statements and unsubstantiated assertions, which "are not competent summary judgment evidence." *Id.*; *see Celotex*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The failure to raise a factual dispute supports finding

Umeorah a "responsible person" under § 6672 during the 31 quarters at issue. *See Dowdy v. United States*, 564 F. Supp. 2d 628, 635–36 (E.D. Tex. 2005) (an individual was liable under § 6672 for failing to "present any evidence contradicting that he . . . was a responsible party").

Umeorah's response is deficient in a second way. Even accepting his conclusory statements and unsubstantiated assertions, the uncontroverted record evidence shows that he met at least three of the *Barnett* factors during the 31 quarters from December 2003 to March 2015. He owned 25 percent of Jubilee's stock, (Docket Entry No. 60-18 at 27:14–15; Docket Entry No. 60-31 at 17); he was a member of the board of directors, (Docket Entry No. 60-17 at 24–25; Docket Entry No. 60-18 at 27:5–10); and he had the authority to hire or fire employees, (Docket Entry No. 60-18 at 29:14–20). Before and while he lived in Nigeria, he also served as Jubilee's president; managed the company's daily affairs; was jointly responsible for payroll; could or did determine Jubilee's financial policy; knew of the company's tax problems; and worked with the Internal Revenue Service to address the unpaid tax debt. (Docket Entry No. 60-17 at 52:21–24, 79:13–15; Docket Entry No. 60-18 at 16:9–11, 32–33, 34:5–9, Docket Entry No. 60-31 at 17). These undisputed facts show that, as a matter of law, Michael Umeorah was a "responsible person" during the 31 quarters. *See Arriondo v. United States*, 196 F. Supp. 3d 708, 720–21 (S.D. Tex. 2016).

Although Michael Umeorah neither managed Jubilee's day-to-day operations nor accessed its accounts from May 2007 to January 2013, his arguments about his time abroad lack merit. Umeorah's arguments are that he was not a "responsible person" because he was unaware of Jubilee's status, including its failure to deposit payroll taxes, and because he delegated authority to Ulasi. The arguments are foreclosed by *Barnett*, 988 F.2d at 1454–55, which held that ignorance of the company's unpaid tax debt and delegation of the power to pay do not absolve a "responsible

person" of liability under § 6672).  Whether Michael Umeorah ignored his duty to pay taxes or delegated it to another party is irrelevant.  *Id.*

Michael Umeorah's best argument centers on his lack of access to company accounts.  But, as the government observes, the power to write company checks is just one of six factors the court considers in determining responsibility; it is not dispositive.  While abroad, Michael Umeorah met three of six factors for liability as a responsible person.  He was a director; he owned a substantial amount of stock; and he maintained the authority to hire and fire employees.  (Docket Entry No. 60-1 at 11–13; Docket Entry No. 60-18 at 27:5–9).  He also visited Houston often and spoke to Ulasi about Jubilee's affairs.  (Docket Entry No. 60-17 at 42:17–25).  No evidence supports an inference that Michael Umeorah could not have accessed Jubilee's accounts and funds if he asked Ulasi or other directors.  Indeed, the opposite appears to be true.  Michael Umeorah regained access without difficulty when he returned to the United States in 2013, suggesting that he was not a signatory on Jubilee's accounts while abroad by choice or because of a lack of interest or diligence, not because Ulasi denied him access or misled him about Jubilee's failure to pay taxes.[2]  (Docket Entry No. 60-18 at 23:16–19, 40:1–2).

Because the undisputed facts show that Michael Umeorah had the authority to make the payments or make them happen, and he failed to do so, he is a responsible person under the statute.  He "could have had 'substantial' input into" the decision to deposit payroll taxes from December 2003 to March 2015, *Barnett*, 988 F.2d at 1455, making him a "responsible person" under § 6672 during the 31 quarters at issue.

---

[2] Michael Umeorah testified that he "wasn't really interested" in Jubilee, was ignorant of its affairs, and "hop[ed]" Ulasi satisfied the company's tax obligations.  (Docket Entry No. 60-18 at 42:6–23).

### ii.    Angela Umeorah

The government argues that Angela Umeorah was a "responsible person" for the same reasons. According to the government, she met five of six *Barnett* factors. She was a director of the company; she owned a quarter of Jubilee's stock; she had the authority to hire and fire employees; she paid creditors, including the Internal Revenue Service; and she had the authority to sign company checks. (Docket Entry No. 60-1 at 13–14). The government argues that she remained responsible while abroad because she never relinquished her directorship or ownership of Jubilee; she knew of the company's tax problems before and after she moved to Nigeria; and she visited Houston often and for extended periods while living abroad. (*Id.*).

Angela Umeorah responds that she was not a "responsible person" because she did not manage Jubilee's day-to-day operations; she lacked access to its accounts; she relied on Ulasi to deposit the taxes; and Ulasi misled her as to the unpaid tax debt. (Docket Entry No. 61 at 6). The government replies with the same arguments that it made against Michael Umeorah: the response failed to raise a genuine issue of material fact; running Jubilee's day-to-day operations and having access to company funds are not necessary to a finding of responsible-person status; and relying on Ulasi is not a defense to liability under § 6672. (Docket Entry No. 62 at 2–3).

Angela Umeorah neither identifies nor provides evidence contesting the government's evidence that she was a "responsible person." (*See* Docket Entry No. 61). Her failure to satisfy her burden under Rule 56 supports finding her responsible under § 6672 for the taxes due during the 31 quarters at issue. *See Forsyth*, 19 F.3d at 1533; *Dowdy*, 564 F. Supp. 2d at 635–36.

Summary judgment is also warranted on this issue because, viewing the evidence in the light most favorable to her, Angela Umeorah was still a "responsible person." The evidence shows that

she met at least three of the *Barnett* factors because she was a director, owned 25 percent of Jubilee's stock, and had the authority to hire or fire its employees. (Docket Entry No. 60-17 at 26–27; Docket Entry No. 60-23 at 1); *see Rogers v. United States*, No. H-13-3544, 2015 WL 1472342, at *4 (S.D. Tex. Feb. 11, 2015) ("[T]he Fifth Circuit has been clear that . . . the presence of one or more *Barnett* factors often indicates that an individual has actual authority to pay the taxes."). She also made decisions as to the payment of creditors and even worked with the Internal Revenue Service to try to address Jubilee's tax debt in 2012. (Docket Entry No. 60-17 at 59–60). Her attempt to escape responsible-person status by blaming Ulasi is unavailing. *See Barnett*, 988 F.2d at 1454–55. The undisputed facts show that Angela Umeorah had the effective power to pay Jubilee's payroll taxes. *Id.* at 1454.

The court finds that Angela Umeorah was a "responsible person" under § 6672 for the 31 quarters at issue from December 2003 to March 2015.

### 2. Were the Umeorahs "Willful"?

Responsible-person status is necessary, but not sufficient, to establish liability under § 6672. Liability attaches only if the responsible party's failure to pay taxes was willful. 26 U.S.C. § 6672(a); *see Barnett*, 988 F.2d at 1457. "Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent." *McClendon*, 892 F.3d at 783 (quoting *Barnett*, 988 F.2d at 1457). It "may be proved by evidence that the responsible person (1) had actual knowledge that the business was delinquent on its withholding taxes but (2) used the business's unencumbered funds to pay the business's non-[Internal Revenue Service] creditors

17

anyway."[3] *Id.*; *see Barnett*, 988 F.2d at 1457 ("[A] considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that taxes are due, is all that is required to establish willfulness."); *Rogers*, 2015 WL 1472342, at *7 ("Once a responsible individual knows that a company has unpaid withholding tax liabilities, he is required to use available funds to make up the unpaid taxes.").

The Fifth Circuit has broadly defined "creditors." For example, a responsible person's decision to pay salaries, utilities, rent, and outstanding loans after learning of the business's unpaid tax obligation shows willfulness. *See Turnbull*, 929 F.2d at 180. And "a responsible person who is found to have acted willfully for at least one quarter is a willful actor for preceding quarters, even if he was unaware of the unpaid payroll tax liability in those earlier quarters." *Arriondo*, 196 F. Supp. 3d at 724; *see Mazo*, 591 F.2d at 1155–56; *Wood v. United States*, 808 F.2d 411, 416 (5th Cir. 1987); *Turnbull*, 929 F.2d at 180.

"Encumbered funds" that fall outside the reach of § 6672 are "subject to restrictions imposed by a creditor holding a [higher] security interest in the funds . . . claimed by the" Internal Revenue Service." *Barnett*, 988 F.2d at 1458 (quoting *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir. 1992)). "[T]hose restrictions preclude a taxpayer from using the funds to pay the trust fund taxes." *Id.* Section 6672 liability "is limited to the amount of 'available, unencumbered funds deposited into [the business's] bank accounts after [the responsible person became aware that the accrued withholding taxes were due.'" *McClendon*, 892 F.3d at 783 (quoting *Barnett*, 988 F.2d at 1459).

---

[3] Willfulness can also be proved by showing that "the responsible person act[ed] with reckless disregard of a known or obvious risk that the trust funds [would] not be remitted to the Government." *McClendon*, 892 F.3d at 783 (quoting *Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir. 1979)). Because the government did not claim that the Umeorahs recklessly disregarded the risk that Jubilee's payroll tax would not be paid, the court does not address this theory.

The government has submitted competent summary judgment evidence of the unpaid trust-fund-recovery assessments that it contends are subject to § 6672 liability. *See Barnett*, 988 F.2d at 1453. The government argues that the Umeorahs were willful because they were aware of the duty to withhold, account for, and deposit the payroll tax; knew that Jubilee failed to satisfy its tax obligation in 2003; and signed checks to pay Jubilee's creditors—other than the Internal Revenue Service—after learning of the company's unpaid tax debt. (Docket Entry No. 60-1 at 16–18, 28). The Umeorahs respond that although they "were making payments to other [creditors], this conduct was not willful because they did not have access to the Jubilee account, and were under the impression that . . . Ulasi was addressing the payroll taxes." (Docket Entry No. 61 at 5).

The Umeorahs again fail to identify or submit evidence raising a genuine factual dispute material to determining that they wilfully failed to pay. (*See id.*). The government's motion cites to deposition testimony and attacehd copies of signed checks showing that the Umeorahs knew of Jubilee's tax debt since 2003, and, after that, paid creditors other than the Internal Revenue Service. (Docket Entry No. 60-1 at 16–18; Docket Entry No. 60-17 at 90–91; Docket Entry No. 60-25 at 2–31; Docket Entry No. 60-26 at 2–6; Docket Entry No. 60-35 at 1–24; Docket Entry No. 60-36 at 5–8). Instead of rebutting the government's argument or citing to the record, the Umeorahs simply reassert that they did not have access to Jubilee's accounts from May 2007 to January 2013. That does not bear on, much less raise a factual dispute as to, whether they acted willfully. *See Forsyth*, 19 F.3d at 1533; *Dowdy*, 564 F. Supp. 2d at 635–36.

A review of the government's evidence confirms that the Umeorahs willfully failed to pay the taxes owed for the 31 quarters at issue. Angela Umeorah testified that she learned in 2000 that businesses must withhold and deposit payroll taxes. (Docket Entry No. 60-17 at 106:8–12).

Michael Umeorah also admitted that he knew of the duty to pay the payroll taxes and that he was among those responsible for Jubilee's payroll. (Docket Entry No. 60-18 at 34:10–16). Deposition testimony shows that the Umeorahs were aware of the company's unpaid tax debt in 2003, before they went to Nigeria. (Docket Entry No. 60-17 at 38:4–9, 54–56; Docket Entry No. 60-18 at 21:6–12, 44–45; Docket Entry No. 60-50 at 2). Angela Umeorah conceded that she and her husband made payments to creditors other than the Internal Revenue Service. The summary judgment evidence of their signed checks demonstrates that those payments occurred during the 31 quarters at issue, after they knew of the unpaid tax debt. (Docket Entry No. 60-17 at 90–91; Docket Entry No. 60-25 at 2–31; Docket Entry No. 60-26 at 2–6; Docket Entry No. 60-35 at 1–24; Docket Entry No. 60-36 at 5–8).

Because the Umeorahs were aware of the unpaid tax debt, could have paid it, and made payments to creditors other than the Internal Revenue Service, there is no genuine factual dispute material to finding that their failure to satisfy the company's tax obligation from December 2003 to March 2015 was willful.

### 3. The Umeorah's Income-Tax Liability and the Federal Tax Liens

The Internal Revenue Service assessed joint income-tax penalties of $124,007.05 against the Umeorahs for tax years 2004–07, 2009–10, and 2014. (Docket Entry No. 60-1 at 6; Docket Entry No. 60-20 at 1–41). Michael and Angela Umeorah both admitted that they are liable for the assessments, and they did not respond to the government's motion to enforce the penalties. (Docket Entry No. 60-17 at 127:2–6; Docket Entry No. 60-18 at 77:5–8). The Umeorahs are jointly liable for the assessed amount.

The government argues, and the Umeorahs concede, that they own the real property located at 29 Old Windsor Way, Sugar Land, Texas 77479, described as:

> Lot Twelve (12), in Block One (1), of Avalon Waters of Avalon, Section Two (2), an Addition in Fort Bend County, Texas, according to the map or plat thereof recorded in slide no. 1725/A & B, of the map/plat records of Fort Bend County, Texas.

(Docket Entry No. 60-1 at 29; Docket Entry No. 60-17 at 23:7–9; Docket Entry No. 60-18 at 73:8–10; Docket Entry No. 60-27 at 1). The Internal Revenue Service has recorded notices of liens against the property to secure the income-tax and trust-fund-recovery penalties assessments. (Docket Entry Nos. 60-28 at 1–8; Docket Entry No. 60-29 at 1–10; Docket Entry No. 60-30 at 1–10). The government asks for a declaration that the liens attach to the Umeorah property. (Docket Entry No. 60-1 at 29). The Umeorahs did not respond. The record shows that, as a matter of law, the liens attach to the Umeorah's real property described in the government's motion. (Docket Entry Nos. 60-28, 60-29, 60-30).

## IV. Conclusion

The court grants the government's motion to strike the Umeorah's surreply, while noting that considering the surreply would not change the analysis or outcome. (Docket Entry No. 65). The court grants the government's motion for summary judgment. (Docket Entry No. 60).

Because Michael Umeorah was a responsible person who willfully failed to pay Jubilee's payroll taxes for the 31 quarters from December 2003 to March 2015, he is indebted to the United States under 26 U.S.C. § 6672 in the amount of $1,016,554.81 as of December 11, 2017, plus prejudgment and postjudgment interest.

Because Angela Umeorah was a responsible person who willfully failed to pay Jubilee's payroll taxes for the 31 quarters from December 2003 to March 2015, she is indebted to the United

States under 26 U.S.C. § 6672 in the amount of $1,016,803.00 as of December 11, 2017, plus prejudgment and postjudgment interest.

The Umeorahs are liable for the joint income-tax assessment in the amount of $124,007.05 as of December 11, 2017, plus prejudgment and postjudgment interest.

The tax liens arising from the trust-fund-recovery and income-tax assessments attach to the Umeorahs' real property. The government is ordered to file a motion to enforce the liens and foreclose on the property, and file a calculation of prejudgment and postjudgment interest, by **January 25, 2019**.

The hearing scheduled for **December 18, 2018**, is canceled.

SIGNED on December 11, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge